**STATE OF SOUTH CAROL**            )

**COUNTY OF** Richland            )

Boveda Asset Management, Inc            )

**Plaintiff(s)**            )

vs.            )

The PNC Financial Services Group, Inc, et. al.            )

**Defendant(s)**            )

**IN THE COURT OF COMMON PLEAS**

**CIVIL ACTION COVERSHEET**

2016CP400 3991

**Submitted By:** Plaintiff

Mail Address: 10945 State Bridge Road

#401-451

Alpharetta, GA 30022

SC Bar #: _____

Telephone #: 888.368.5640 ext. 2119

Fax #: 888.360.6659

Other: _____

E-mail: info@1baminc.com

NOTE: The coversheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed, and dated. A copy of this coversheet must be served on the defendant(s) along with the Summons and Complaint.

## DOCKETING INFORMATION  *(Check all that apply)*
*If Action is Judgment/Settlement do not complete*

[X] **JURY TRIAL** demanded in complaint.     [ ] **NON-JURY TRIAL** demanded in complaint.
[ ] This case is subject to **ARBITRATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
[ ] This case is subject to **MEDIATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
[ ] This case is exempt from ADR. (Proof of ADR/Exemption Attached)

### NATURE OF ACTION  *(Check One Box Below)*

| Contracts | Torts - Professional Malpractice | Torts – Personal Injury | Real Property |
|---|---|---|---|
| [ ] Constructions (100) | [ ] Dental Malpractice (200) | [ ] Conversion (310) | [ ] Claim & Delivery (400) |
| [ ] Debt Collection (110) | [ ] Legal Malpractice (210) | [ ] Motor Vehicle Accident (320) | [ ] Condemnation (410) |
| [ ] General (130) | [ ] Medical Malpractice (220) | [ ] Premises Liability (330) | [ ] Foreclosure (420) |
| [ ] Breach of Contract (140) | Previous Notice of Intent Case # | [ ] Products Liability (340) | [ ] Mechanic's Lien (430) |
| [X] Fraud/Bad Faith (150) | 20___-NI-____-_____ | [ ] Personal Injury (350) | [ ] Partition (440) |
| [ ] Failure to Deliver/ | [ ] Notice/ File Med Mal (230) | [ ] Wrongful Death (360) | [ ] Possession (450) |
| Warranty (160) | | [ ] Assault/Battery (370) | [ ] Building Code Violation (460) |
| [ ] Employment Discrim (170) | [ ] Other (299) _____ | [ ] Slander/Libel (380) | [ ] Other (499) _____ |
| [ ] Employment (180) | | [ ] Other (399) _____ | |
| [ ] Other (199)_____ | | | |

| Inmate Petitions | Administrative Law/Relief | Judgments/Settlements | Appeals |
|---|---|---|---|
| [ ] PCR (500) | [ ] Reinstate Drv. License (800) | [ ] Death Settlement (700) | [ ] Arbitration (900) |
| [ ] Mandamus (520) | [ ] Judicial Review (810) | [ ] Foreign Judgment (710) | [ ] Magistrate-Civil (910) |
| [ ] Habeas Corpus (530) | [ ] Relief (820) | [ ] Magistrate's Judgment (720) | [ ] Magistrate-Criminal (920) |
| [ ] Other (599) | [ ] Permanent Injunction (830) | [ ] Minor Settlement (730) | [ ] Municipal (930) |
| _____ | [ ] Forfeiture-Petition (840) | [ ] Transcript Judgment (740) | [ ] Probate Court (940) |
| | [ ] Forfeiture—Consent Order (850) | [ ] Lis Pendens (750) | [ ] SCDOT (950) |
| | [ ] Other (899) | [ ] Transfer of Structured | [ ] Worker's Comp (960) |
| | _____ | Settlement Payment Rights | [ ] Zoning Board (970) |
| | | Application (760) | [ ] Public Service Comm. (990) |
| Special/Complex /Other | | [ ] Confession of Judgment (770) | [ ] Employment Security Comm (991) |
| [ ] Environmental (600) | [ ] Pharmaceuticals (630) | [ ] Petition for Workers | |
| [ ] Automobile Arb. (610) | [ ] Unfair Trade Practices (640) | Compensation Settlement | [ ] Other (999) _____ |
| [ ] Medical (620) | [ ] Out-of State Depositions (650) | Approval (780) | |
| [ ] Other (699) _____ | [ ] Motion to Quash Subpoena in an | [ ] Other (799) _____ | |
| | Out-of-County Action (660) | | |
| [ ] Sexual Predator (510) | [ ] Pre-Suit Discovery (670) | | |
| [ ] Permanent Restraining Order (680) | | | |

**Date:** June 28, 2016

**Submitting Party Signature:**

Note: Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

STATE OF SOUTH CAROLINA,

COUNTY OF RICHLAND

Bóveda Asset Management, Inc

         **Plaintiff,**

vs.

The PNC Financial Services Group, Inc dba
PNC Bank
Shameka N. Grier-McCray, Assistant Vice President
Erica (PNC Regional Loss Prevention Manager for
Mrs. Grier-McCray)

         **Defendant.**

IN THE COURT OF COMMON PLEAS

SUMMONS

FILE NO. _____-CP-____-_____

RICHLAND COUNTY
FILED
2016 JUN 28  PM 2: 53
JEANNETTE W. McBRIDE
C.C.P. & G.S.

TO THE DEFENDANT ABOVE-NAMED:

  YOU ARE HEREBY SUMMONED and required to answer the complaint herein, a copy of which is herewith served upon you, and to serve a copy of your answer to this complaint upon the subscriber, at the address shown below, within thirty (30) days after service hereof, exclusive of the day of such service, and if you fail to answer the complaint, judgment by default will be rendered against you for the relief demanded in the complaint.

Columbia, South Carolina

               Plaintiff/Attorney for Plaintiff

Dated: June 28, 2016

      **Address:**   10945 State Bridge Road
            #401-451
            Alpharetta, GA 30022

SCCA 401 (5/02)

**STATE OF SOUTH CAROLINA**
**RICHLAND COUNTY**
**FIFTH JUDICIAL DISTRICT**

Bóveda Asset Management, Inc.
          Plaintiff,

-vs-

The PNC Financial Services Group, Inc. dba
PNC Bank
Shameka N. Grier-McCray, Assistant Vice President
Erica (PNC Regional Loss Prevention Manager for Mrs. )
      Grier-McCray)

Civil File No.

**JURY TRIAL DEMAND**

RICHLAND COUNTY FILED
2016 JUN 2 PM 2: 53
JEANNETTE W. MCBRIDE
C.C.P. G.S.

**COMPLAINT**

Come Now, Plaintiff, Bóveda Asset Management, Inc a corporation duly formed under and in existence within in the State of Florida and files its complaint against the above named Defendants as identified below and herein:

1. The Plaintiff's CEO is Kenneth Witherspoon, a married man and US Veteran ("CEO").
2. PNC Financial Services Group, Inc is a corporation legally organized and existing in the State of Pennsylvania ("Bank" and/or "Corporate").
3. PNC Bank is a dba of Corporate which its local retail centers operate.
4. PNC Financial Services Group, Inc operates local bank branches in 18 states, one of which is South Carolina, with its branch located at 701 Gervais Street, Columbia, SC ("Branch").

WHEREIN, Plaintiff hereby states that Bank through its Branch Manager identified herein violated applicable state and federals laws as identified herein below

**Statement of Salient Facts**

| Date / Time | Description of Events |
|---|---|
| | **Background** |
| June 16, 2016 Approx. 1215 | 1. CEO visited Branch after being instructed that although the account opening process started online CEO must visit a branch to complete the opening process. |
| | 2. Once inside Branch CEO was greeted by an employee inquiring of the purpose for the visit. CEO informed the employee that he was there to inquire about opening a business account. The employee stated that Mrs. Shameka would be the one to talk regarding the account opening and pointed to Mrs. Shameka standing at an island in the center of the Branch floor. |
| | 3. Mrs. Shameka identified herself as Shameka Grier-McCray, Branch Manager ("Branch Manager"). While standing in the center of the floor, CEO informed Branch Manager that the account opening process was started online and he was instructed that before the account could be opened the account he had to complete the process at a branch. Branch Manager then inquired and received the name of the Plaintiff and the Plaintiff's EIN number. CEO further informed Branch Manager that Plaintiff is a Florida Corporation and CEO needed to learn if, the account could be opened in SC because of the time constraints and did not certain |

if he would be back in Florida in time to open the account before the application would deleted.

4. Branch Manager Informed CEO that she was not certain if she could but would call her associate in Florida she then corrected the statement and said her associate branch in Florida to see if she could open the account. Branch Manager made the call and spoke with someone, informing the person on the other end the situation and CEO was sitting in her office. After hanging up the phone Branch Manager informed CEO they could open the account.

5. The Branch Manager then asked for the articles of incorporation, CEO informed her she can obtained the articles from online and Branch Manager replied she could not pull them from online and had to receive them from CEO. CEO informed her that he would have to leave to obtain them but would be back in a few minutes because he had a scanned copy of the document on his laptop.

**Approx. 1335**    6. CEO returned with the Articles of Incorporation and at that time Branch Manager inquired for the IRS issued EIN Letter. CEO reminded Branch Manager that he had previously provided her with the EIN. Branch Manager then stated she needed the IRS issued Letter for verification. CEO informed her that he would return after he retrieved the document, Branch Manager provided a business card, writing IRS Letter on the rear of the business card. She further asked if CEO could email the EIN Letter to her and informed CEO that the process would take about 40 to 45 minutes to open the account so, if CEO could email the document to her, she would get started on the process so it would not take up too much of CEO's time. CEO informed her yes he could email the document and he would email the document. Branch Manager further informed CEO that she take lunch at 2 o'clock.

**1415**    7. After having to log into the Plaintiff's VPN to access the required information, CEO emailed a copy of the EIN letter to Branch Manager. CEO further printed a hard copy of the document just in case Branch Manager did not receive the emailed document.

**Approx. 1432**    8. CEO returned to Branch to complete the account opening process. Once in Branch Manager's office CEO informed Branch Manager that the document was emailed to her. When she searched her email Branch Manager informed CEO that she did not receive the email. CEO then informed her he brought a hardcopy just in case and provided her with the hardcopy.

9. During the process, Branch Manager asked for two forms of ID, she requested to see CEO's Driver's License and also a Debit or Credit Card as a second form of ID. Both items were provided upon request.

**PINACLE Express**    10. Branch Manager, after a series of questions recommended a business account which she stated was best for Plaintiff based on anticipated uses. She then recommended the PINACLE Express service because of the volume of wire transfers in and out of the account and had CEO to speak with PINACLE Express representative on speaker phone to initiate the process. During the PINACLE Express call the representative inquired of CEO's full legal name and CEO provided her with his full legal name. The PINACLE Express representative stated she had to use CEO's full legal name. The Branch Manager, in an undertone, stated she had to use the name on the Articles of Incorporation.

11. PINACLE Express documents were signed.

Bóveda Asset Management, Inc -v- PNC F⸱⸱⸱al Services Group, Inc
Page 3 of 9

**Initial Deposit**

12. Branch Manager then asked CEO about the deposit and CEO informed Branch Manager the amount of the deposit and further informed Branch Manager that deposits were in check form. CEO then separated the checks from their respective receipt handing them to Branch Manager as they were separated. Branch Manager noticed on one check, which was a refund check, that the Payee on the Check was Boveda Realty Investors. CEO informed Branch Manager that he did not notice the name on the check was not to Plaintiff and Branch Manager then stated "We will process it through for you. There will be two day availability, but we will go ahead and process it through". CEO state "Thank you".

13. Branch Manager got up from her desk, returned CEO's ID items and exited her office with the checks and returned a few minutes later with the deposit receipt and the account documents for signature. The documents were signed and CEO exited the office.

14. CEO returned to the Branch a few minutes later and inquired of two things. 1. CEO remembered that during the process Branch Manager did not provide him with online access information. She informed CEO that he would have to wait for the ATM/Debit card before he would be able to gain access to online. 2. To inquire if the check with the Payee name of Boveda Realty Investors would be a problem and Branch Manager assured CEO they would process the check through.

15. Branch Manager, stated she forgot to have CEO input an online PIN and had CEO to enter the PIN. CEO did so and exited the Branch.

June 18, 2016
Approx. 2300

16. Contrary to what Branch Manager told CEO, CEO went to the Bank's website to see what was needed to gain access to the online portal and learn that everything was already provided in the branch visit on June 16, 2016. So, CEO signed up online and noticed that the email address entered by the Branch Manager was incorrect. The errors were corrected in the online session.

June 20, 2016
Approx. 0814

17. CEO received a call from the Patriot Act Group at PNC Bank however CEO was not available to answer the call at that time a message was left. CEO returned the call and the representative inquired of his full legal name CEO provided his full legal name and the representative placed CEO on a brief hold and came back indicating that was the only thing needed because the application submitted by the bank was Ken and they needed CEO's full legal name. CEO informed the Patriot Act Group representative the Branch Manager indicated she had to use the name on the corporate documents instead of CEO's full legal name. CEO further inquired if, everything was okay, and if they needed anything more from CEO. Patriot Act Group representative informed CEO they did not need anything else and everything was good.

Approx. 1230

18. CEO visited branch to withdraw cash to pay bills and was set back when the teller told him the deposit was on hold. However Teller informed CEO that she could call and have the hold lifted within a few minutes. Teller made a call then went to Branch Manager's office. Branch Manager then asked CEO to come to her office. When in Branch Manager's office, she informed CEO the bank placed a hold on the whole deposit, not just the check. Branch Manager then informed CEO it was because of the name difference, and CEO only had to wait 5 days from the date of deposit, until the check cleared and the funds would be available on Friday, June 24, 2016. Branch Manager further stated that she would have to verify some

Bóveda Asset Management, Inc -v- PNC F    ial Services Group, Inc
Page 4 of 9

things on Thursday, June 23, 2016 to ensure the hold is lifted on Friday.

19. Branch Manager further explained they had to ensure the check cleared the Payer's bank account before so there is no issue with the Payer. CEO then informed Branch Manager the business entity was also a company which he controlled and if she needed the documents showing the entity as in his control he could provide the documents. Branch Manager once again recommended to CEO to wait until Friday.

20. CEO exited branch and returned to inquire about receiving the check back to have it reissued to Plaintiff by the Payer and redeposit it to the account, since the check has not yet cleared. CEO further informed Branch Manager that he felt that would take some time to do because the initial check took a while to be issued because the companies were merging. Branch Manager stated that because the check was already deposited it could not be returned and it would be Friday when the funds would be available. CEO exited the Branch.

June 24, 2016
Approx. 0846

21. CEO called the telephone automated banker to learn if the hold has been lifted as the Branch Manager indicated. CEO learned that the funds were not available and selected to speak with a representative. Once on the line CEO informed the representative the reason for the call and after verification and requesting account identifying information was ask to hold while the account is checked. When the representative returned to the line, CEO was informed that the deposit was placed on hold. The representative then informed CEO that she could not give any more information because she did not know and would have to transfer me to the department that placed the hold on the deposit and she further provided CEO with the phone number in the event I needed to call back.

22. When the call was transferred the voicemail indicated the department was closed and would not open until 0900.

Approx. 0910

23. Calling the provided number, the automated reception identified the department as the Loss Avoidance Group and the representative that answered identified herself as Wendy and provided CEO with information on the account. She informed CEO that the deposit was on hold and the Branch had control over having the hold lifted. She stated that the Branch Manager is working with the local market to verify the deposited item and once they have completed their review the Branch would notify their department to lift the hold. CEO then asked her who placed the hold on the deposit and she confirmed her department placed the hold on the account.

24. During the conversation CEO informed Wendy that the previous representative who provided CEO with the number to your department informed CEO the reason for the hold was because the bank which the check was drawn upon was not going to honor the check. The Representative Wendy informed CEO that was not true and the previous representative misspoke and did not tell CEO the truth because they could not see if the check cleared and did not know if the check was going to be paid.

25. She stated she would provide the branch information to speak with the Branch to have the hold lifted when she begun to speak the name of the Branch Manager CEO interrupted her and informed her he had the Branch's information and would speak with the Branch Manager.

Approx. 1145

26. CEO arrived at the Branch, after waiting for about 15 minutes or so, Branch Manager came

out and escorted CEO to her office. She proceeded to inform CEO that the deposit is still on hold and everything was out of her control. She further stated that she attempted to contact the bank which the check was drawn upon, Wells Fargo, to determine if the check has cleared and stated that the Wells Fargo would not inform her if the check cleared or not. Branch Manager further informed CEO that she called the company that issued the check , NRT, to learn if the check cleared and to validate the check and stated she spoke with Mrs. Linda and Mrs. Linda provided her with the number to NRT's Comptroller in Charlotte, NC, Mrs. Sain.

27. Branch Manager further stated that when she learned of the hold which was placed by Wendy in their Loss Avoidance Department Wendy informed her that the hold was going to be for 3 years. That threw up all sorts of flags with the CEO and he stated, that did not make any sense because if it was a major issue with the check the bank should have return the check and state they cannot collect on the check or ask for proof that CEO had controlling interest in the entity which was payee on the check.

28. CEO spent nearly an hour trying to understand the logic which the Branch Manager was feeding to him and could not understand the logic other than the bank verifying the check being issued by NRT to the payee on the check which CEO did not have any issues with.

29. CEO left branch highly upset.

Approx. 1315    30. CEO arrived at the office of NRT and informed Mrs. Linda of the situation and requested the number of someone that could help verify the check has cleared. Mrs. Linda then went into an office and return with a photocopy of a business card which contained Mrs. Sain's contact information.

Approx. 1330    31. CEO returned to Branch to speak with Branch Manager, taking a witness.

32. While waiting for Branch Manager to become available, CEO exited the Branch to call Mrs. Sain but was unable to reach her. So he returned inside the Branch. Witness was upset because Branch Manager came out of the office and although we were there before other customers the Branch Manager elected to take the other customers before taking CEO and Witness stating she did not have everything she needed yet.

33. Once the Branch Manager came out again to speak CEO and Witness, CEO requested that the conversation be held in her office as Branch Manager was trying to hold the conversation in the waiting area.

34. After entering Branch Manager's office the witness gathered some basic identifying information from the Branch Manager. Branch Manager was opposed to speaking with witness and witness informed Branch Manager that we were in Columbia putting together a transaction and have been working on the transaction since January and looking for $125 Million to come into the bank to support the plan that will support Veterans and Emergency Responders within the State. So, if they are going to have an issue with the small deposit given to open the account, how will the bank handle larger transactions?

35. Witness, then asked about the status of the account and Branch Manager refused to speak with Witness stating Witness was not on the account and she could not speak with Witness. CEO then informed Branch Manager that he was sitting there and Branch Manager could

Bóveda Asset Management, Inc -v- PNC F̲̅ ̅ ̅ ̅ ̅ ial Services Group, Inc
Page 6 of 9

Speak with Witness. Branch Manager then complied, reluctantly.

36. Branch Manager begun to restate what she had previously stated and stated they had to verify the check and it was out of her hands. She further referenced Wendy (of Loss Avoidance Department) witness was present during time when CEO spoke with Wendy and heard the conversation and heard Wendy state that Branch Manager had to verify the deposit and contact them to have the hold lifted. Witness requested that the Branch Manager to place her statement in writing on letterhead regarding the hold, Branch Manager refused and stated a letter was already sent out to the mailing address of Plaintiff.

37. Witness then requested a printout of the account; Branch Manager refused and stated they could not provide a printout. Both Witness and CEO were taken back and Witness informed Branch Manager that both Witness and CEO were once in banking and knows she can provide a printout of the account. The Branch Manager then stated the account was new and there was nothing to printout from the account. CEO reminded the Branch Manager that although the account is new, there is, if nothing else, at least one transaction, the deposit. Branch Manager then stated she could print out the activity of the account. Branch Manager printed the activity screen and brought it back to the office with a PNC stamp. Witness requested that Branch Manager sign document which she provided however, Branch Manager refused to sign the document but stapled her business card to the document instead.

38. Witness became agitated with Branch Manager and informed her that Branch Manager had lied several times. Branch Manager became agitated words were exchanged between Witness and Branch Manager. Witness and CEO vacated the Branch.

June 24, 2016    39. Witness and CEO returned to NRT(Coldwell Banker), company which issued the check,
Approx. 1500    because on the printout obtained from the Branch Manager it indicated that on June 21, 2016 the check was rejected twice by the Bank and charges were assessed in the amount of $50.00 and $5.00 was on the printout.

40. Upon entering NRT(Coldwell Banker) offices, the Witness explained the situation and express disgust that the refund check which was given to Plaintiff bounced. The NRT representative went into action to clear their name. After about 10 minutes Witness and CEO were introduced to Mrs. Jennifer Harding to get to the bottom of the situation.

Exhibit A. PNC    41. After explaining everything to Mrs. Harding and showing the printout from the Branch,
Activity Printout    Mrs. Harding began to call corporate executives because the PNC printout showed the payment/check was rejected on June 21, 2016 and a hard hold was place on the account also on June 21, 2016, not June 16 as informed by the Branch Manager. This was puzzling to everyone because of the size of NRT(Coldwell Banker).

42. Witness and CEO were informed by Mr. Harding to give her an hour and she will let Witness and CEO know what is going on. Mrs. Harding obtain name and phone numbers

June 24, 2016    43. A call from Mrs. Harding to Witness informed Witness that the check clear their bank,
Apprx. 1650    Wells Fargo, and she will be sending a copy of the canceled check.
Exhibit B.

Bóveda Asset Management, Inc  -v- PNC F      ial Services Group, Inc
Page 7 of 9

## INFRACTIONS
### Count I

Breach of Trust
with Fraudulent
Intent

44. On June 20, 2016 CEO was told a hold was placed on the account for five days from the date of deposit. CEO was further informed that checks will take 5 days to clear and the Branch Manager had no control over removing the hold. On June 24, 2016 CEO was informed that the checks have not cleared but the Branch Manager had to check with the issuer of the check learn if the check cleared. CEO was provided with a printout which indicated the check deposited was rejected and a hold was placed on the account. By these actions the Branch Manager committed Breach of Trust with Fraudulent Intent;

SC Code § 16-13-230 Breach of Trust with Fraudulent Intent

### Count II

Conspiracy &
Conspiracy to
Defraud

45. Branch Manager had from June 20, 2016 to June 24, 2016 to investigate the check and failed to do so within the 5 day period. Wherein Witness and CEO found out within 2 hours what the Branch Manager failed to accomplish in 5 days.

46. In the phone call to PNC telephone banking system on Friday, June 24, 2016 the representative informed CEO the reason for the hold on the account was due to the bank, which the check was drawn upon, was not going to pay the check. Attached evidence shows the representative had no justifiable reason for making such a statement unless that was their intent or she knew of such intent.

47. Branch Manager utilized bank systems and others within the bank to place holds on funds for later removal from the banking network. While informing CEO the funds have not cleared. The utilization and coordination with other bank employees, either knowingly or in ignorance surmounted to conspiracy and violates the following statute(s);

SC Code § 16-17-410 Conspiracy
18 USC § 371 Conspiracy to Commit Offense

### Count III

Anti-trust
Violation

48. On June 24, 2016 Branch Manager indicated that when the funds are released they will close the account. When CEO inquired for the reason for closing the account the Branch Manager failed to provide an answer and simply stated it was out of her hands and that decision would be made by her Loss Prevention Manager Erica which is located in North Carolina.

49. The Bank has no reason to close the account except to restrict trade and prevent competition, because all documents were correct and true otherwise the account would not have been opened.

50. By virtue of the acts described above and within this suit, Defendants knowingly committed acts against Plaintiff is the intent to prevent Plaintiff from operating as legal enterprise which will cause unmeasurable and irreparable harm to Plaintiff and is in violation of the following;

Sherman Act of 1890
Clayton Act of 1914

Bóveda Asset Management, Inc -v- PNC F...  ial Services Group, Inc
Page 8 of 9

Federal Trade Commission Act of 1914

### Prayer for Relief

WHEREFORE, Plaintiff Bóveda Asset Management Inc demands that judgement be entered in its favor against the Defendants as follows:

A. On Count I (Breach of Trust with Fraudulent Intent), judgement against the Defendants for treble damages as further established at trial, plus a penalty of One Hundred Thousand Dollars ($100,000) per Defendant for each day Plaintiff funds were on hold after June 20, 2016 as established by trial. Plaintiff further pray for the immediate removal of Branch Manager from her position and that the Solicitor General of the State of South Carolina cause arrest warrants to be issued and criminal charges be brought against Branch Manager as provided by law;

B. On Count II (Conspiracy & Conspiracy to Defraud), judgement against the Defendants for treble damages as further established at trial, plus a penalty of One Hundred Thousand Dollars ($100,000) per Defendant for each day Plaintiff funds were on hold after June 20, 2016 as established by trial;

C. On Count III (Anti-Trust Violation) judgement against the Defendants for treble damages as further established at trial, plus a penalty of Five Billion Dollars ($5,000,000,000) per Defendant for each calendar day Plaintiff funds were on hold after June 20, 2016 as established by trial;

Plaintiff further prays that the Attorney General in and for the United States of America and or the Solicitor General of the State of South Carolina cause arrest warrants to be issued for the Branch Manager along with and for all co-conspirators as provided by law.

### PRAYER FOR A JURY TRIAL

The Plaintiff prays for a jury trial in this action.

Respectfully Submitted
Bóveda Asset Management, Inc

Kenneth Witherspoon, Its CEO
10945 State Bridge Road
Suite 401-451
Alpharetta, GA 3022
Telephone: (888) 368-5640 ext. 2119
Email: info@1baminc.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served, at the minimum, by First Class U.S. Mail this 27th day of June 2016 to;

Honorable Loretta Lynch
Attorney General of the United Stated
950 Pennsylvania Avenue N.W.
Washington, D.C. 20530-0001

William S. Demchak (CEO)
The PNC Financial Services Group, Inc
The Tower at PNC Plaza
300 Fifth Avenue
Pittsburgh, PA 15222

George Long (Corporate Secretary)
The PNC Financial Services Group, Inc
The Tower at PNC Plaza
300 Fifth Avenue
Pittsburgh, PA 15222

I HEREBY CERTIFY that a copy of the foregoing was served, in person this 27th day of June 2016 to;

Shameka N. Grier-McCray
701 Gervais Street
Columbia, SC 29201

STATE OF SOUTH CAROLINA

COUNTY OF <u>RICHLAND</u>

IN THE COURT OF COMMON PLEAS

Boveda Asset Management, Inc.
☐ Plaintiff

CASE NO.

2016-CP-40-03991

v.

**MOTION AND ORDER INFORMATION**

The PNC Financial Services Group, Inc. dba PNC
Bank; Shameka N. Grier-McCray, Assistant Vice
President; and Erica (PNC Regional Loss
Prevention Manager for Mrs. Grier-McCray)
☒ Defendant.

**FORM AND COVER SHEET**

| Plaintiff's Attorney:  Kenneth Witherspoon | Defendant's Attorney:  Lawrence M. Hershon, Esq. |
|---|---|
| Bar No.  N/A | Bar No.  77514 |
| Address:  10945 State Bridge Road, #401-451 | Address:  Parker Poe Adams & Bernstein |
| Alpharetta, GA 30022 | PO Box 1509 |
| | Columbia, SC  29202 |
| phone:  (888) 368-5640          fax: | phone:  (803) 255-8000     fax: (803) 255-8017 |
| email: info@1baminc.com     other: | email:  (803) 253-8918          other: |

☒ **MOTION HEARING REQUESTED (attach written motion and complete SECTIONS 1 and III)**
☐ **FORM MOTION, NO HEARING REQUESTED (complete SECTIONS II and III)**
☐ **PROPOSED ORDER/CONSENT ORDER (complete SECTIONS II AND III)**

**SECTION I:  Hearing Information**

Nature of Motion:  Motion to Dismiss
Estimated Time Needed:  20 Minutes                    Court Reporter Needed:  ☒ YES          ☐ NO

**SECTION II:  Motion/Order Type**

☐ Written motion attached
☐ Form Motion/Order

I hereby move for relief or action by the court as set forth in the attached proposed order.

_____                    _____
Signature of Attorney for ☐ Plaintiff / ☐ Defendant          Date Submitted

**SECTION III:  Motion Fee**

☒ PAID – AMOUNT: $25.00
☐ EXEMPT:     ☐ Rule to Show Cause in Child or Spousal Support
(check reason)  ☐ Domestic Abuse or Abuse and Neglect
                   ☐ Indigent Status     ☐ State Agency v. Indigent Party
                   ☐ Sexually Violent Predator Act     ☐ Post-Conviction Relief
                   ☐ Motion for Stay in Bankruptcy
                   ☐ Motion for Publication     ☐ Motion for Execution (Rule 69, SCRCP)
                   ☐ Proposed order submitted at request of the court; or,
                      reduced to writing from motion made in open court per judge's instructions
                      Name of Court Reporter:
                   ☐ Other:

| **JUDGE'S SECTION** | |
|---|---|
| ☐ Motion Fee to be paid upon filing of the attached order. | _____ |
| ☐ Other: | JUDGE |
| | CODE: _____     Date: _____ |

**CLERK'S VERIFICATION**

Collected by: _____          Date Filed: _____

☐ MOTION FEE COLLECTED: _____     _____

☐ CONTESTED – AMOUNT DUE:_____

SCCA/233 (11-03)

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS
)
COUNTY OF RICHLAND ) Case No.: 2016-CP-40-03991
)
Boveda Asset Management, Inc., )
)
Plaintiff, ) **DEFENDANTS' MOTION**
) **TO DISMISS**
vs. )
)
The PNC Financial Services Group, Inc. )
dba PNC Bank; Shameka N. Grier- )
McCray, Assistant Vice President; and )
Erica (PNC Regional Loss Prevention )
Manager for Mrs. Grier-McCray); )
)
Defendants. )
)

YOU WILL PLEASE TAKE NOTICE THAT Defendants The PNC Financial Services

Group, Inc. dba PNC Bank ("PNC Bank"); Shameka N. Grier-McCray, Assistant Vice President;

and Erica (PNC Regional Loss Prevention Manager for Mrs. Grier-McCray) (collectively, the

"Defendants"), by and through their undersigned counsel, move for an Order dismissing

Plaintiff's Complaint in the captioned case pursuant to South Carolina Rules of Civil Procedure

Rule 12(b)(1), 12(b)(2), 12(b)(4), 12(b)(5), and 12(b)(6) of the South Carolina Rules of Civil

Procedure.

This Motion to Dismiss is supported by the Affidavits of Amy Wells, Shameka Grier-

McCray, and Lawrence Hershon which are attached as Exhibits 1, 2, and 3 respectively.

In support of this Motion, Defendants state that:

1.      Plaintiff made the following attempts to deliver the Summons, Complaint or both to PNC

Bank:

(a)     Plaintiff attempted to serve PNC Bank on June 27, 2016, when its Chief

Executive Officer Kenneth Witherspoon's wife delivered an unfiled copy of the

Complaint to Amy Wells—a Branch Sales and Service Associate for PNC Bank. [Amy Wells Affidavit].

(b)     Plaintiff also attempted to serve PNC Bank when Kenneth Witherspoon mailed copies of the Complaint to William S. Demachak and George Long—the President and Secretary of PNC Bank—as evidenced by the certificate of service that was attached to the Complaint which states:

> I HEREBY CERTIFY that a copy of the foregoing was served, at the minimum, by First Class U.S. Mail this 27[th] day of June 2016 to;
>
> William S. Demachak (CEO)
> The PNC Financial Services Group, Inc.
> The Tower at PNC Plaza
> 300 Fifth Avenue
> Pittsburgh, PA 15222
>
> George Long (Corporate Secretary)
> The PNC Financial Services, Group, Inc.
> The Tower at PNC Plaza
> 300 Fifth Avenue
> Pittsburgh, PA 15222

2.     Plaintiff made the following attempts to deliver the Summons, Complaint, or both to Shameka N. Grier-McCray:

(a)     According to the certificate of service that was filed with the Complaint, Kenneth Witherspoon attempted to personally serve Shameka N. Grier-McCray.  The certificate of service states the following:

> I HEREBY CERTIFY that a copy of the foregoing was served, in person this 27[th] day of June 2016 to;
>
> Shameka N. Grier-McCray
> 701 Gervais Street
> Columbia, SC 29201

However, contrary to the statements within the certificate of service, Kenneth Witherspoon did not deliver a copy of the Complaint to Ms. Grier-McCray. [Shameka Grier-McCray Affidavit].

(b)    On June 29, 2016, Kenneth Witherspoon emailed a copy of the Summons to Ms. Grier-McCray. [Shameka N. Grier-McCray Affidavit].

3.    Plaintiff did not attempt to deliver either the summons or complaint or to otherwise serve "Erica."

4.    Kenneth Witherspoon has not filed Proof of Service for any of the Defendants.

5.    Plaintiff purports to be a corporation organized and existing under the laws of Florida. [Complaint]. The Complaint is signed and executed on behalf of the Plaintiff corporation by Kenneth Witherspoon. Kenneth Witherspoon is not a licensed attorney [Affidavit of Lawrence Hershon]; therefore, he cannot represent Plaintiff in this action and cannot execute or file pleadings on Plaintiff's behalf. *See Renaissance Enterprises, Inc. v. Summit Teleservices, Inc.*, 334 S.C. 649, 651, 515 S.E.2d 257, 258 (1999) ("[A] non-lawyer cannot represent a corporation in circuit or appellate courts."); *Days Inn Worldwide, Inc. v. JBS, Inc.*, No. 4:08-CV-1771-TLW-TER, 2010 WL 625391, at *2 (D.S.C. Feb. 19, 2010) (noting that it has been uniformly held that a non-attorney individual may not represent a corporation in federal court). Therefore, Kenneth Witherspoon engaged in the unauthorized practice of law when he filed this action on Plaintiff's behalf. Additionally, Plaintiff Corporation may not appear pro se in court. *See Id.*, at 653, 515 S.E.2d at 259 (holding a corporation does not have the right to appear pro se in a state circuit or appellate court); S.C. Code Ann. § 40-5-320 (providing that it is unlawful for a corporation to "hold itself out to the public as being entitled to practice law, render or furnish legal services, advise or to furnish attorneys or counsel, or render

legal services in actions or proceedings"). Because (i) Plaintiff is not represented by an attorney and (ii) a corporation may not represent itself, Plaintiff does not have standing to bring its claims and the Court does not have jurisdiction over Plaintiff's claims. Therefore, the Court should dismiss the Complaint pursuant to Rule 12(b)(1) for a lack of subject matter jurisdiction. *See Travelers Ins. Co. (NC) v. Roof Doctor, Inc.*, 325 S.C. 614, 616, 481 S.E.2d 451, 452 (Ct. App. 1997) (granting a motion to dismiss an appeal based on the non-lawyer corporate president's unauthorized practice of law); *Penland Fin. Servs., Inc. v. Select Fin. Servs., LLC*, No. CA 6:08-3864-HMH-WMC, 2008 WL 5279638, at *3 (D.S.C. Dec. 18, 2008), *aff'd*, 315 F. App'x 456 (4th Cir. 2009) (finding the court did not have subject matter jurisdiction because the pro se litigant lacked standing to litigate the rights of a corporation); *Batac Dev. Corp. v. B&R Consultants, Inc.*, No. 98 CIV. 721 (CSH), 2000 WL 307400, at *2 (S.D.N.Y. Mar. 23, 2000) ("It follows from this rule that because [the plaintiff]'s motion was made not by counsel but by a layperson who cannot legally represent the plaintiff, [the court] must disregard it as a nullity."); *Flora Construction Company v. Fireman's Fund Insurance Co.*, 307 F.2d 413, 414 (10th Cir. 1962) (affirming the dismissal of pleadings filed on behalf of a corporation by its non-lawyer president); *First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279, 1290 (Fed. Cir. 1999) (pro se actions by non-attorneys on behalf of corporations "fail for lack of standing").

6.      PNC Bank was not properly served with process as required by Rule 4 when Mr. Witherspoon's wife delivered an unfiled copy of the Complaint to Amy Wells. Mrs. Witherspoon delivered a copy of the Complaint to Amy Wells on June 27, 2016. [Amy Wells Affidavit]. The Complaint was not filed with the Court until June 28, 2016. [File Stamped Copy]. The summons and complaint must be filed prior to service. Rule 3(a)

SCRCP; Rule 4(a), FRCP ("A summons must . . . be signed by the clerk; and bear the court's seal."); *J.O. Alvarez, Inc. v. Rainbow Textiles, Inc.*, 168 F.R.D. 201, 202 (S.D. Tex. 1996) ("Service of process is governed by Federal Rule of Civil Procedure 4. Rule 4(a) and (b) describe the proper form and manner of a summons and complaint. A summons can be obtained only if the plaintiff has filed a complaint. The plaintiff must then serve the summons and complaint as prescribed by Rule 4. Effective service, therefore, presupposes a properly filed complaint."). Therefore, the Court should dismiss the Complaint pursuant to Rule 12(b)(4) and/or Rule 12(b)(5) for insufficiency of process or insufficiency of service of process, because the Complaint had not yet been filed when delivery was made to PNC Bank, and Rule 12(b)(2), because the failure properly to serve the summons and complaint deprives the Court of personal jurisdiction over PNC Bank. *See Bowman v. Weeks Marine, Inc.*, 936 F. Supp. 329, 342 (D.S.C. 1996) ("Under the proper service rule, Defendant must prevail because service under South Carolina state law was not proper and therefore this court must dismiss the action for lack of personal jurisdiction over the Defendant."); *see also Arora v. James*, No. 5:14-CV-00018-JMC, 2015 WL 5616260, at *17 (D.S.C. Sept. 24, 2015) ("A defendant may challenge the sufficiency of service of process and seek dismissal of the case under Rule 12(b)(5) of the Federal Rules of Civil Procedure. Failure to properly serve the summons and complaint deprives the court of personal jurisdiction over a defendant.").

7.    PNC Bank was not properly served with process as required by Rule 4 when Mrs. Witherspoon delivered a copy of the Complaint to Amy Wells, because Amy Wells is not authorized to accept service on behalf of PNC Bank. [Amy Wells Affidavit]. Service upon a person who is not authorized to accept service for the party is ineffective. *See Moore v. Simpson*, 322 S.C. 518, 523-24, 473 S.E.2d 64, 67 (Ct. App. 1996) ("Without

specific authorization to receive process, service is not effective when made upon an employee of the defendant."); *Bowman*, 936 F. Supp. at 343 (applying the rule from *Moore* and holding the employee was not a person authorized to accept service for Defendant, so service of process was not valid on [the] [d]efendant"). Therefore, due to this insufficiency of service of process, the Court should dismiss the Complaint pursuant to Rule 12(b)(4) for insufficiency of process and Rule 12(b)(5) because an agent authorized to accept service on behalf of PNC Bank has not been properly served, and Rule 12(b)(2) because the failure properly to serve the summons and complaint deprives the Court of personal jurisdiction over PNC Bank. *See Id.* at 342; *Arora*, 2015 WL 5616260, at *17.

8.     PNC Bank was not properly served with process as required by Rule 4 because it has not been served with a summons. Mrs. Witherspoon did not deliver a copy of the Summons when she delivered the Complaint to Amy Wells. [Amy Wells Affidavit].     Each defendant is required to be served a copy of the summons. Rule 4(a), SCRCP ("Copies of the original summons shall be served upon each defendant."); Rule 4(b), FRCP.  Thus, the Court must dismiss the Complaint pursuant to Rule 12(b)(4) and/or rule 12(b)(5) based on this insufficiency of process or insufficiency of service of process, and Rule 12(b)(2) because the failure properly to serve the summons and complaint deprives the Court of personal jurisdiction over PNC Bank. *See Unisun Ins. v. Hawkins*, 342 S.C. 537, 544 n.3, 537 S.E.2d 559, 563 n.3 (Ct. App. 2000) ("A Rule 12(b)(5) motion is the proper vehicle for challenging the . . . lack of delivery of the summons and complaint." (citation omitted)); *see also Bowman*, 936 F. Supp. at 342; *Arora*, 2015 WL 5616260, at *17.

9.     PNC Bank was not properly served with process as required by Rule 4 when Kenneth Witherspoon mailed a copy of the Complaint via First Class U.S. Mail to William S. Demachak, the CEO of The PNC Financial Services, Inc. Rule 4(d)(8), SCRCP, requires service that is mailed to be sent by either registered or certified mail, return receipt requested and delivery restricted to the addressee. *See Langley v. Graham*, 322 S.C. 428, 431, 472 S.E.2d 259, 261 (Ct. App. 1996) ("[T]he new federal rules have abolished service by mail, except to the extent permitted by applicable state practice."). Therefore, Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(4) for insufficiency of process and Rule 12(b)(5) because Plaintiff failed to serve Mr. Demachak with copies of the Summons and Complaint in the manner prescribed by Rule 4(d)(8), and Rule 12(b)(2) because the failure properly to serve the summons and complaint deprives the Court of personal jurisdiction over PNC Bank. *See Bowman*, 936 F. Supp. at 342; *Arora*, 2015 WL 5616260, at *17.

10.     PNC Bank was not properly served with process as required by Rule 4 when Kenneth Witherspoon mailed a copy of the Complaint to Mr. Demachak on June 27, 2016, because the Complaint was not filed until June 28, 2016. The summons and complaint must be filed prior to service. Rule 3(a), SCRCP; Rule 4(a), FRCP. Therefore, the Court should dismiss the action pursuant to Rule 12(b)(4) for insufficiency of process and Rule 12(b)(5) for insufficiency of service of process because the pleadings had not yet been filed when Kenneth Witherspoon mailed a copy of the Complaint to Mr. Demachak, and Rule 12(b)(2) because the failure properly to serve the summons and complaint deprives the Court of personal jurisdiction over PNC Bank. *See Bowman*, 936 F. Supp. at 342; *Arora*, 2015 WL 5616260, at *17.

11.    PNC Bank was not properly served with process as required by Rule 4 when Kenneth
Witherspoon mailed a copy of the Complaint via First Class U.S. Mail to George Long,
the Corporate Secretary of The PNC Financial Services Group, Inc., because Rule
4(d)(8), SCRCP, requires service that is mailed to be sent by either registered or certified
mail, return receipt requested and delivery restricted to the addressee. *See Langley*, 322
S.C. at 431, 472 S.E.2d at 261. Therefore, Plaintiff's Complaint should be dismissed
pursuant to Rule 12(b)(4) for insufficiency of process and Rule 12(b)(5) because Plaintiff
failed to serve Mr. Long with copies of the Summons and Complaint in the manner
prescribed by Rule 4(d)(8), and Rule 12(b)(2) because the failure to properly serve the
summons and complaint deprives the Court of personal jurisdiction over PNC Bank. *See
Bowman*, 936 F. Supp. at 342; *Arora*, 2015 WL 5616260, at *17.

12.    PNC Bank was not properly served with process as required by Rule 4 when Kenneth
Witherspoon mailed a copy of the Complaint to Mr. Long on June 27, 2016, because the
Complaint was not filed until June 28, 2016. The summons and complaint must be filed
prior to service. Rule 3(a), SCRCP; Rule 4(a), FRCP. Therefore, the Court should
dismiss the action pursuant to Rule 12(b)(4) for insufficiency of process and Rule
12(b)(5) for insufficiency of service of process because the pleadings had not yet been
filed when Kenneth Witherspoon mailed a copy of the Complaint to Mr. Long, and Rule
12(b)(2) because the failure to properly serve the summons and complaint deprives the
Court of personal jurisdiction over PNC Bank. *See Bowman*, 936 F. Supp. at 342; *Arora*,
2015 WL 5616260, at *17.

13.    Shameka N. Grier-McCray was not properly served with process as required by Rule 4
when Kenneth Witherspoon allegedly personally delivered an unfiled copy of the
Complaint to her on June 27, 2016. The Complaint was filed with the Court on June 28,

2016. The summons and complaint must be filed prior to service. *See* Rule 3(a), SCRCP; Rule 4(a), FRCP. Therefore, the Court should dismiss the action pursuant to Rule 12(b)(4) for insufficiency of process and Rule 12(b)(5) for insufficiency of service of process upon Ms. Grier-McCray because the pleadings had not yet been filed when service was attempted, and Rule 12(b)(2) because the failure to properly serve the summons and complaint deprives the Court of personal jurisdiction over Ms. Grier-McCray. *See Bowman*, 936 F. Supp. at 342; *Arora*, 2015 WL 5616260, at *17.

14. Ms. Grier-McCray was not properly served with process as required by Rule 4 when Kenneth Witherspoon e-mailed her a copy of the Summons on June 29, 2016. [Shameka N. Grier-McCray Affidavit]. E-mail is not an effective method of service. *See* Rule 4, SCRCP (prescribing the appropriate methods of service in South Carolina); Rule 4, FRCP (prescribing the appropriate methods of service in federal court); *Columbia Ins. Co. v. seescandy.*com, 185 F.R.D. 573, 579 (N.D. Cal. 1999) (stating that service of process by electronic mailing to an e-mail address associated with the defendant was not sufficient to comply with the federal rules of civil procedure). Therefore, the Court should dismiss the action pursuant to Rule 12(b)(5) for insufficiency of service of process upon Ms. Grier-McCray because the South Carolina Rules of Civil Procedure do not allow a party to serve a Summons by email, and Rule 12(b)(2) because the failure to properly serve the summons and complaint deprives the Court of personal jurisdiction over Ms. Grier-McCray. *See Bowman*, 936 F. Supp. at 342; *Arora*, 2015 WL 5616260, at *17.

15. Plaintiff failed properly to serve Erica (PNC Regional Loss Prevention Manager for Mrs. Grier-McCray). There is no evidence that "Erica" has been served with copies of the Summons or Complaint in this action. Therefore, the Court should dismiss all claims

against "Erica" pursuant to Rule 12(b)(4) for insufficiency of process and Rule 12(b)(5) for insufficient service of process, and Rule 12(b)(2) because the failure properly to name and serve a defendant deprives the Court of personal jurisdiction.

16.   Plaintiff failed to state a claim upon which relief may be granted for Breach of Trust with Fraudulent Intent.  Plaintiff asserts this claim pursuant to Section 16-13-230 of the South Carolina Code.  Section 16-13-230 is a criminal statute that does not provide a private right of action.  Therefore, Plaintiff has failed to state a claim for Breach of Trust with Fraudulent Intent and dismissal is proper pursuant to Rule 12(b)(6).  *See Dorman v. Aiken Commcns., Inc.*, 303 S.C. 63, 67, 398 S.E.2d 687, 688-89 (1990) (refusing to find a private right of action for "a criminal statute which provides only for criminal sanctions").

17.   Plaintiff failed to state a claim upon which relief may be granted for conspiracy and conspiracy to defraud the United States.  S.C. Code § 16-17-410; 18 U.S.C. § 371. Plaintiff asserts its claims pursuant to state and federal criminal statutes; however, neither of those criminal statutes create a private right of action.  Therefore, the Court should dismiss those claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  *See Dorman*, 303 S.C. at 67, 398 S.E.2d at 688-89.

18.   Plaintiff failed to state a claim for violation of the Federal Trade Commission Act, 15 U.S.C. § 45.  The Federal Trade Commission Act does not create a private right of action to recover damages.  *See Plowman v. Bagnal*, 316 S.C. 283, 287, 450 S.E.2d 36, 38 (1994), *adhered to on reh'g* (Oct. 19, 1994) (holding the Federal Trade Commission Act "does not create a private right of action to recover damages").  Therefore, the Court should dismiss Plaintiff's claim for violation of the Federal Trade Commission Act pursuant to Rule 12(b)(6) for a failure to state a claim upon which relief may be granted.

19.    Plaintiff failed to state facts sufficient to constitute a cause of action under the Sherman Anti-Trust Act, 15 U.S.C. § 1.  Plaintiff simply makes bare assertions of a conspiracy without alleging any facts to support a claim for violation of the Sherman Anti-Trust Act. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (stating that under § 1 of the Sherman Anti-Trust Act "a bare assertion of conspiracy will not suffice").  Therefore, the Court should dismiss Plaintiff's claims for violation of the Sherman Anti-Trust Act pursuant to Rule 12(b)(6).

20.    Plaintiff failed to state a claim upon which relief may be granted for violation of the Clayton Act, 15 U.S.C. § 12.  Plaintiff makes vague assertions that do not amount to a threat of an anti-trust injury or predatory pricing under the Clayton Act.  Therefore, Plaintiff has failed to state a claim for violation of the Clayton Act and the Court should dismiss the Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

21.    Plaintiff does not have the capacity to sue in South Carolina, because Plaintiff is not registered to do business in South Carolina and does not have a certificate of authority as required by Section 33-15-102 of the South Carolina Code.  [Lawrence Hershon Affidavit].  "A foreign corporation transacting business in this State without a certificate of authority may not maintain a proceeding in any court in this State until it obtains a certificate of authority." S.C. Code 33-15-102(a).  Therefore, Plaintiff does not have the capacity to sue (the Court must, at a minimum stay the action until Plaintiff obtains a certificate of authority). S.C. Code § 33-15-102.

In addition to the attached affidavits, this Motion to Dismiss is supported by the pleadings, the applicable statutory and common law, and any memorandum of law or other material that Defendants may submit to the Court before or at the hearing on this Motion.

Respectfully submitted,

James Lynn Werner
Lawrence M. Hershon
Katon E. Dawson Jr.
Parker Poe Adams & Bernstein LLP
1221 Main Street, Suite 1100
Post Office Box 1509
Columbia, South Carolina 29202-1509
Telephone: 803-255-8000
Facsimile: 803-255-8017
jimwerner@parkerpoe.com
lawrencehershon@parkerpoe.com
katondawson@parkerpoe.com

Attorneys for Defendants

July 26 2016
Columbia, South Carolina

STATE OF SOUTH CAROLINA    )   IN THE COURT OF COMMON PLEAS

                                )

COUNTY OF RICHLAND            )   Case No.: 2016-CP-40-03991

                                )

Boveda Asset Management, Inc.,     )

                                )

        Plaintiff,            )         **AFFIDAVIT OF**

                                )         **AMY WELLS**

       vs.                   )

                                )

The PNC Financial Services Group, Inc. )

dba PNC Bank; Shameka N. Grier-    )

McCray, Assistant Vice President; and  )

Erica (PNC Regional Loss Prevention  )

Manager for Mrs. Grier-McCray);     )

                                )

       Defendants.         )

_____  )

Amy Wells, under oath, being first duly sworn, hereby deposes and says:

1.     I am over eighteen (18) years of age, suffer from no known disability and am competent to testify to the facts set forth herein.  The statements in this affidavit are made based upon my personal knowledge.

2.     I am employed by PNC Bank, National Association ("PNC Bank") as a Branch Sales and Service Associate in Columbia, South Carolina.

3.     On June 27, 2016, I was working in the PNC Bank Columbia Branch when an individual that I believe to be Kenneth Witherspoon's wife handed me one copy of the Complaint in the above captioned lawsuit.

4.     A true and correct copy of the Complaint handed to me is attached hereto as Exhibit A.

5.     The Complaint did not show any case number or other indication that it had been filed in the Richland County Court of Commons Pleas or any other court.

6.     I did not receive a Summons or a Civil Action Coversheet when I was provided with a copy of the Complaint, or at any other time.

EXHIBIT "1"

7.    Upon information and belief, I am the only individual at PNC Bank who received a copy of the Complaint from Mrs. Witherspoon.

8.    I am not authorized to accept service on behalf of PNC Bank or PNC Financial Services Group, Inc.

9.    I did not tell or otherwise inform Mrs. Witherspoon that I was authorized to accept service on behalf of PNC Bank or PNC Financial Services Group, Inc.

10.    Upon information and belief, Shameka N. Grier-McCray was not served a copy of either the Summons or Complaint.


FURTHER, AFFIANT SAYETH NOT.

This 26th day of July, 2016.

_____
Amy Wells
PNC Bank Branch Sales and Service Associate


SWORN to before me this
26 day of July, 2016.

_____
Notary Public for South Carolina
My Commission Expires: 5/2/2026

TABITHA E. POPE
Notary Public, State of South Carolina
My Commission Expires 5/2/2026

STATE OF SOUTH CAROLINA
RICHLAND COUNTY
FIFTH JUDICIAL DISTRICT

Bóveda Asset Management, Inc.
          Plaintiff,

-vs-

The PNC Financial Services Group, Inc. dba
PNC Bank
Shameka N. Grier-McCray, Assistant Vice President
Erica (PNC Regional Loss Prevention Manager for Mrs.)
     Grier-McCray)

Civil File No.

**JURY TRIAL DEMAND**

COMPLAINT

Come Now, Plaintiff, Bóveda Asset Management, Inc a corporation duly formed under and in existence within in the State of Florida and files its complaint against the above named Defendants as identified below and herein:

1. The Plaintiff's CEO is Kenneth Witherspoon, a married man and US Veteran ("CEO").
2. PNC Financial Services Group, Inc is a corporation legally organized and existing in the State of Pennsylvania ("Bank" and/or "Corporate").
3. PNC Bank is a dba of Corporate which its local retail centers operate.
4. PNC Financial Services Group, Inc operates local bank branches in 18 states, one of which is South Carolina, with its branch located at 701 Gervais Street, Columbia, SC ("Branch").

WHEREIN, Plaintiff hereby states that Bank through its Branch Manager identified herein violated applicable state and federals laws as identified herein below

**Statement of Salient Facts**

| Date / Time | Description of Events |
|---|---|
| | Background |
| June 16, 2016 Approx. 1215 | 1. CEO visited Branch after being instructed that although the account opening process started online CEO must visit a branch to complete the opening process. |
| | 2. Once inside Branch CEO was greeted by an employee inquiring of the purpose for the visit. CEO informed the employee that he was there to inquire about opening a business account. The employee stated that Mrs. Shameka would be the one to talk regarding the account opening and pointed to Mrs. Shameka standing at an island in the center of the Branch floor. |
| | 3. Mrs. Shameka identified herself as Shameka Grier-McCray, Branch Manager ("Branch Manager"). While standing in the center of the floor, CEO informed Branch Manager that the account opening process was started online and he was instructed that before the account could be opened the account he had to complete the process at a branch. Branch Manager then inquired and received the name of the Plaintiff and the Plaintiff's EIN number. CEO further informed Branch Manager that Plaintiff is a Florida Corporation and CEO needed to learn if, the account could be opened in SC because of the time constraints and did not certain |


EXHIBIT "A"

if he would be back in Florida in time to open the account before the application would deleted.

4. Branch Manager informed CEO that she was not certain if she could but would call her associate in Florida she then corrected the statement and said her associate branch in Florida to see if she could open the account. Branch Manager made the call and spoke with someone, informing the person on the other end the situation and CEO was sitting in her office. After hanging up the phone Branch Manager informed CEO they could open the account.

5. The Branch Manager then asked for the articles of incorporation, CEO informed her she can obtained the articles from online and Branch Manager replied she could not pull them from online and had to receive them from CEO. CEO informed her that he would have to leave to obtain them but would be back in a few minutes because he had a scanned copy of the document on his laptop.

Approx. 1335    6. CEO returned with the Articles of Incorporation and at that time Branch Manager inquired for the IRS issued EIN Letter. CEO reminded Branch Manager that he had previously provided her with the EIN. Branch Manager then stated she needed the IRS issued Letter for verification. CEO informed her that he would return after he retrieved the document, Branch Manager provided a business card, writing IRS Letter on the rear of the business card. She further asked if CEO could email the EIN Letter to her and informed CEO that the process would take about 40 to 45 minutes to open the account so, if CEO could email the document to her, she would get started on the process so it would not take up too much of CEO's time. CEO informed her yes he could email the document and he would email the document. Branch Manager further informed CEO that she take lunch at 2 o'clock.

1415    7. After having to log into the Plaintiff's VPN to access the required information, CEO emailed a copy of the EIN letter to Branch Manager. CEO further printed a hard copy of the document just in case Branch Manager did not receive the emailed document.

Approx. 1432    8. CEO returned to Branch to complete the account opening process. Once in Branch Manager's office CEO informed Branch Manager that the document was emailed to her. When she searched her email Branch Manager informed CEO that she did not receive the email. CEO then informed her he brought a hardcopy just in case and provided her with the hardcopy.

9. During the process, Branch Manager asked for two forms of ID, she requested to see CEO's Driver's License and also a Debit or Credit Card as a second form of ID. Both items were provided upon request.

PINACLE Express    10. Branch Manager, after a series of questions recommended a business account which she stated was best for Plaintiff based on anticipated uses. She then recommended the PINACLE Express service because of the volume of wire transfers in and out of the account and had CEO to speak with PINACLE Express representative on speaker phone to initiate the process. During the PINACLE Express call the representative inquired of CEO's full legal name and CEO provided her with his full legal name. The PINACLE Express representative stated she had to use CEO's full legal name. The Branch Manager, in an undertone, stated she had to use the name on the Articles of Incorporation.

11. PINACLE Express documents were signed.

Initial Deposit

12. Branch Manager then asked CEO about the deposit and CEO informed Branch Manager the amount of the deposit and further informed Branch Manager that deposits were in check form. CEO then separated the checks from their respective receipt handing them to Branch Manager as they were separated. Branch Manager noticed on one check, which was a refund check, that the Payee on the Check was Boveda Realty Investors. CEO informed Branch Manager that he did not notice the name on the check was not to Plaintiff and Branch Manager then stated "We will process it through for you. There will be two day availability, but we will go ahead and process it through". CEO state "Thank you".

13. Branch Manager got up from her desk, returned CEO's ID Items and exited her office with the checks and returned a few minutes later with the deposit receipt and the account documents for signature. The documents were signed and CEO exited the office.

14. CEO returned to the Branch a few minutes later and inquired of two things. 1. CEO remembered that during the process Branch Manager did not provide him with online access information. She informed CEO that he would have to wait for the ATM/Debit card before he would be able to gain access to online. 2. To inquire if the check with the Payee name of Boveda Realty Investors would be a problem and Branch Manager assured CEO they would process the check through.

15. Branch Manager, stated she forgot to have CEO input an online PIN and had CEO to enter the PIN. CEO did so and exited the Branch.

June 18, 2016
Approx. 2300

16. Contrary to what Branch Manager told CEO, CEO went to the Bank's website to see what was needed to gain access to the online portal and learn that everything was already provided in the branch visit on June 16, 2016. So, CEO signed up online and noticed that the email address entered by the Branch Manager was incorrect. The errors were corrected in the online session.

June 20, 2016
Approx. 0814

17. CEO received a call from the Patriot Act Group at PNC Bank however CEO was not available to answer the call at that time a message was left. CEO returned the call and the representative inquired of his full legal name CEO provided his full legal name and the representative placed CEO on a brief hold and came back indicating that was the only thing needed because the application submitted by the bank was Ken and they needed CEO's full legal name. CEO informed the Patriot Act Group representative the Branch Manager indicated she had to use the name on the corporate documents instead of CEO's full legal name. CEO further inquired if, everything was okay, and if they needed anything more from CEO. Patriot Act Group representative informed CEO they did not need anything else and everything was good.

Approx. 1230

18. CEO visited branch to withdraw cash to pay bills and was set back when the teller told him the deposit was on hold. However Teller informed CEO that she could call and have the hold lifted within a few minutes. Teller made a call then went to Branch Manager's office. Branch Manager then asked CEO to come to her office. When in Branch Manager's office, she informed CEO the bank placed a hold on the whole deposit, not just the check. Branch Manager then informed CEO it was because of the name difference, and CEO only had to wait 5 days from the date of deposit, until the check cleared and the funds would be available on Friday, June 24, 2016. Branch Manager further stated that she would have to verify some

things on Thursday, June 23, 2016 to ensure the hold is lifted on Friday.

19. Branch Manager further explained they had to ensure the check cleared the Payer's bank account before so there is no issue with the Payer. CEO then informed Branch Manager the business entity was also a company which he controlled and if she needed the documents showing the entity as in his control he could provide the documents. Branch Manager once again recommended to CEO to wait until Friday.

20. CEO exited branch and returned to inquire about receiving the check back to have it reissued to Plaintiff by the Payer and redeposit it to the account, since the check has not yet cleared. CEO further informed Branch Manager that he felt that would take some time to do because the initial check took a while to be issued because the companies were merging. Branch Manager stated that because the check was already deposited it could not be returned and it would be Friday when the funds would be available. CEO exited the Branch.

June 24, 2016
Approx. 0846

21. CEO called the telephone automated banker to learn if the hold has been lifted as the Branch Manager indicated. CEO learned that the funds were not available and selected to speak with a representative. Once on the line CEO informed the representative the reason for the call and after verification and requesting account identifying information was ask to hold while the account is checked. When the representative returned to the line, CEO was informed that the deposit was placed on hold. The representative then informed CEO that she could not give any more information because she did not know and would have to transfer me to the department that placed the hold on the deposit and she further provided CEO with the phone number in the event I needed to call back.

22. When the call was transferred the voicemail indicated the department was closed and would not open until 0900.

Approx. 0910

23. Calling the provided number, the automated reception identified the department as the Loss Avoidance Group and the representative that answered identified herself as Wendy and provided CEO with information on the account. She informed CEO that the deposit was on hold and the Branch had control over having the hold lifted. She stated that the Branch Manager is working with the local market to verify the deposited item and once they have completed their review the Branch would notify their department to lift the hold. CEO then asked her who placed the hold on the deposit and she confirmed her department placed the hold on the account.

24. During the conversation CEO informed Wendy that the previous representative who provided CEO with the number to your department informed CEO the reason for the hold was because the bank which the check was drawn upon was not going to honor the check. The Representative Wendy informed CEO that was not true and the previous representative misspoke and did not tell CEO the truth because they could not see if the check cleared and did not know if the check was going to be paid.

25. She stated she would provide the branch information to speak with the Branch to have the hold lifted when she begun to speak the name of the Branch Manager CEO interrupted her and informed her he had the Branch's information and would speak with the Branch Manager.

Approx. 1145

26. CEO arrived at the Branch, after waiting for about 15 minutes or so, Branch Manager came

out and escorted CEO to her office. She proceeded to inform CEO that the deposit is still on hold and everything was out of her control. She further stated that she attempted to contact the bank which the check was drawn upon, Wells Fargo, to determine if the check has cleared and stated that the Wells Fargo would not inform her if the check cleared or not. Branch Manager further informed CEO that she called the company that issued the check , NRT, to learn if the check cleared and to validate the check and stated she spoke with Mrs. Linda and Mrs. Linda provided her with the number to NRT's Comptroller in Charlotte, NC, Mrs. Sain.

27. Branch Manager further stated that when she learned of the hold which was placed by Wendy in their Loss Avoidance Department Wendy informed her that the hold was going to be for 3 years. That threw up all sorts of flags with the CEO and he stated, that did not make any sense because if it was a major issue with the check the bank should have return the check and state they cannot collect on the check or ask for proof that CEO had controlling interest in the entity which was payee on the check.

28. CEO spent nearly an hour trying to understand the logic which the Branch Manager was feeding to him and could not understand the logic other than the bank verifying the check being issued by NRT to the payee on the check which CEO did not have any issues with.

29. CEO left branch highly upset.

Approx. 1315    30. CEO arrived at the office of NRT and informed Mrs. Linda of the situation and requested the number of someone that could help verify the check has cleared. Mrs. Linda then went into an office and return with a photocopy of a business card which contained Mrs. Sain's contact information.

Approx. 1330    31. CEO returned to Branch to speak with Branch Manager, taking a witness.

32. While waiting for Branch Manager to become available, CEO exited the Branch to call Mrs. Sain but was unable to reach her. So he returned inside the Branch. Witness was upset because Branch Manager came out of the office and although we were there before other customers the Branch Manager elected to take the other customers before taking CEO and Witness stating she did not have everything she needed yet.

33. Once the Branch Manager came out again to speak CEO and Witness, CEO requested that the conversation be held in her office as Branch Manager was trying to hold the conversation in the waiting area.

34. After entering Branch Manager's office the witness gathered some basic identifying information from the Branch Manager. Branch Manager was opposed to speaking with witness and witness informed Branch Manager that we were in Columbia putting together a transaction and have been working on the transaction since January and looking for $125 Million to come into the bank to support the plan that will support Veterans and Emergency Responders within the State. So, if they are going to have an issue with the small deposit given to open the account, how will the bank handle larger transactions?

35. Witness, then asked about the status of the account and Branch Manager refused to speak with Witness stating Witness was not on the account and she could not speak with Witness. CEO then informed Branch Manager that he was sitting there and Branch Manager could

Speak with Witness. Branch Manager then complied, reluctantly.

36. Branch Manager begun to restate what she had previously stated and stated they had to verify the check and it was out of her hands. She further referenced Wendy (of Loss Avoidance Department) witness was present during time when CEO spoke with Wendy and heard the conversation and heard Wendy state that Branch Manager had to verify the deposit and contact them to have the hold lifted. Witness requested that the Branch Manager to place her statement in writing on letterhead regarding the hold, Branch Manager refused and stated a letter was already sent out to the mailing address of Plaintiff.

37. Witness then requested a printout of the account; Branch Manager refused and stated they could not provide a printout. Both Witness and CEO were taken back and Witness informed Branch Manager that both Witness and CEO were once in banking and knows she can provide a printout of the account. The Branch Manager then stated the account was new and there was nothing to printout from the account. CEO reminded the Branch Manager that although the account is new, there is, if nothing else, at least one transaction, the deposit. Branch Manager then stated she could print out the activity of the account. Branch Manager printed the activity screen and brought it back to the office with a PNC stamp. Witness requested that Branch Manager sign document which she provided however, Branch Manager refused to sign the document but stapled her business card to the document instead.

38. Witness became agitated with Branch Manager and informed her that Branch Manager had lied several times. Branch Manager became agitated words were exchanged between Witness and Branch Manager. Witness and CEO vacated the Branch.

June 24, 2016
Approx. 1500

39. Witness and CEO returned to NRT(Coldwell Banker), company which issued the check, because on the printout obtained from the Branch Manager it indicated that on June 21, 2016 the check was rejected twice by the Bank and charges were assessed in the amount of $50.00 and $5.00 was on the printout.

40. Upon entering NRT(Coldwell Banker) offices, the Witness explained the situation and express disgust that the refund check which was given to Plaintiff bounced. The NRT representative went into action to clear their name. After about 10 minutes Witness and CEO were introduced to Mrs. Jennifer Harding to get to the bottom of the situation.

Exhibit A. PNC
Activity Printout

41. After explaining everything to Mrs. Harding and showing the printout from the Branch, Mrs. Harding began to call corporate executives because the PNC printout showed the payment/check was rejected on June 21, 2016 and a hard hold was place on the account also on June 21, 2016, not June 16 as informed by the Branch Manager. This was puzzling to everyone because of the size of NRT(Coldwell Banker).

42. Witness and CEO were informed by Mr. Harding to give her an hour and she will let Witness and CEO know what is going on. Mrs. Harding obtain name and phone numbers

June 24, 2016
Apprx. 1650
Exhibit B.

43. A call from Mrs. Harding to Witness informed Witness that the check clear their bank, Wells Fargo, and she will be sending a copy of the canceled check.

## INFRACTIONS
### Count I

**Breach of Trust with Fraudulent Intent**

44. On June 20, 2016 CEO was told a hold was placed on the account for five days from the date of deposit. CEO was further informed that checks will take 5 days to clear and the Branch Manager had no control over removing the hold. On June 24, 2016 CEO was informed that the checks have not cleared but the Branch Manager had to check with the issuer of the check learn if the check cleared. CEO was provided with a printout which indicated the check deposited was rejected and a hold was placed on the account. By these actions the Branch Manager committed Breach of Trust with Fraudulent Intent;

SC Code § 16-13-230 Breach of Trust with Fraudulent Intent

### Count II

**Conspiracy & Conspiracy to Defraud**

45. Branch Manager had from June 20, 2016 to June 24, 2016 to investigate the check and failed to do so within the 5 day period. Wherein Witness and CEO found out within 2 hours what the Branch Manager failed to accomplish in 5 days.

46. In the phone call to PNC telephone banking system on Friday, June 24, 2016 the representative informed CEO the reason for the hold on the account was due to the bank, which the check was drawn upon, was not going to pay the check. Attached evidence shows the representative had no justifiable reason for making such a statement unless that was their intent or she knew of such intent.

47. Branch Manager utilized bank systems and others within the bank to place holds on funds for later removal from the banking network. While informing CEO the funds have not cleared. The utilization and coordination with other bank employees, either knowingly or in ignorance surmounted to conspiracy and violates the following statute(s);

SC Code § 16-17-410 Conspiracy
18 USC § 371 Conspiracy to Commit Offense

### Count III

**Anti-trust Violation**

48. On June 24, 2016 Branch Manager indicated that when the funds are released they will close the account. When CEO inquired for the reason for closing the account the Branch Manager failed to provide an answer and simply stated it was out of her hands and that decision would be made by her Loss Prevention Manager Erica which is located in North Carolina.

49. The Bank has no reason to close the account except to restrict trade and prevent competition, because all documents were correct and true otherwise the account would not have been opened.

50. By virtue of the acts described above and within this suit, Defendants knowingly committed acts against Plaintiff is the intent to prevent Plaintiff from operating as legal enterprise which will cause unmeasurable and irreparable harm to Plaintiff and is in violation of the following;

Sherman Act of 1890
Clayton Act of 1914

Federal Trade Commission Act of 1914

### Prayer for Relief

WHEREFORE, Plaintiff Bóveda Asset Management Inc demands that judgement be entered in its favor against the Defendants as follows:

A. On Count I (Breach of Trust with Fraudulent Intent), judgement against the Defendants for treble damages as further established at trial, plus a penalty of One Hundred Thousand Dollars ($100,000) per Defendant for each day Plaintiff funds were on hold after June 20, 2016 as established by trial. Plaintiff further pray for the immediate removal of Branch Manager from her position and that the Solicitor General of the State of South Carolina cause arrest warrants to be issued and criminal charges be brought against Branch Manager as provided by law;

B. On Count II (Conspiracy & Conspiracy to Defraud), judgement against the Defendants for treble damages as further established at trial, plus a penalty of One Hundred Thousand Dollars ($100,000) per Defendant for each day Plaintiff funds were on hold after June 20, 2016 as established by trial;

C. On Count III (Anti-Trust Violation) judgement against the Defendants for treble damages as further established at trial, plus a penalty of Five Billion Dollars ($5,000,000,000) per Defendant for each calendar day Plaintiff funds were on hold after June 20, 2016 as established by trial;

Plaintiff further prays that the Attorney General in and for the United States of America and or the Solicitor General of the State of South Carolina cause arrest warrants to be issued for the Branch Manager along with and for all co-conspirators as provided by law.

### PRAYER FOR A JURY TRIAL

The Plaintiff prays for a jury trial in this action.

Respectfully Submitted
Bóveda Asset Management, Inc

Kenneth Witherspoon, Its CEO
10945 State Bridge Road
Suite 401-451
Alpharetta, GA 3022
Telephone: (888) 368-5640 ext. 2119
Email: info@1baminc.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served, at the minimum, by First Class U.S. Mail this 27th day of June 2016 to;

Honorable Loretta Lynch
Attorney General of the United Stated
950 Pennsylvania Avenue N.W.
Washington, D.C. 20530-0001


William S. Demchak (CEO)
The PNC Financial Services Group, Inc
The Tower at PNC Plaza
300 Fifth Avenue
Pittsburgh, PA 15222

George Long (Corporate Secretary)
The PNC Financial Services Group, Inc
The Tower at PNC Plaza
300 Fifth Avenue
Pittsburgh, PA 15222


I HEREBY CERTIFY that a copy of the foregoing was served, in person this 27th day of June 2016 to;

Shameka N. Grier-McCray
701 Gervais Street
Columbia, SC 29201

| | |
|---|---|
| STATE OF SOUTH CAROLINA | )   IN THE COURT OF COMMON PLEAS |
| | ) |
| COUNTY OF RICHLAND | )   Case No.: 2016-CP-40-03991 |
| | ) |
| Boveda Asset Management, Inc., | ) |
| | ) |
|       Plaintiff, | )      **AFFIDAVIT OF** |
| | )   **SHAMEKA N. GRIER-MCCRAY** |
|       vs. | ) |
| | ) |
| The PNC Financial Services Group, Inc. | ) |
| dba PNC Bank; Shameka N. Grier- | ) |
| McCray, Assistant Vice President; and | ) |
| Erica (PNC Regional Loss Prevention | ) |
| Manager for Mrs. Grier-McCray); | ) |
| | ) |
|       Defendants. | ) |
| | ) |

Shameka N. Grier-McCray, under oath, being first duly sworn, hereby deposes and says:

1.     I am over eighteen (18) years of age, suffer from no known disability and am competent to testify to the facts set forth herein. The statements in this affidavit are made based upon my personal knowledge.

2.     I am employed by PNC Bank, National Association ("PNC Bank") as a Branch Manager at the PNC Bank located at 701 Gervais Street, Columbia, South Carolina.

3.     Neither Kenneth Witherspoon nor his wife has ever personally handed to me any document styled as a Complaint or Summons in the above-captioned matter.

4.     On June 27, 2016, I saw the Complaint that was delivered to Amy Wells. It did not include a Summons.

5.     On June 29, 2016, Kenneth Witherspoon delivered an email to me with a copy of the file-stamped Summons and Complaint in the captioned lawsuit attached. A copy of the email and its attachment are attached hereto as <u>Exhibit A</u>.

6.     June 29, 2016 was the first date on which I saw a copy of the Complaint in the captioned lawsuit with any indication that it had been filed with a court of law.

EXHIBIT "2"

FURTHER, AFFIANT SAYETH NOT.

This _26th_ day of July, 2016.

_Shameka N. S. McCray_
Shameka N. Grier-McCray
PNC Bank Branch Manager

SWORN to before me this
_26_ day of July, 2016.

_Tabitha E. Pope_
Notary Public for South Carolina
My Commission Expires: _5|2|2026_

**TABITHA E. POPE**
Notary Public, State of South Carolina
My Commission Expires 5/2/2026

From:     Kenneth Witherspoon <kwitherspoon707@gmail.com>
To:       "Shameka N. Grier-McCray" <shameka.grier-mccray@pnc.com>,
Date:     06/29/2016 09:39 AM
Subject:  Summons - Filed

---

I received your email informing me of the account closure and check being sent to the address you have, which was not identified. Your email will be provided to our Attorney for presentation to the Judge for criminal warrants to be issued.

Also attached to this email is the file copy of the complaint which was hand delivered to you.

The contents of this email are the property of PNC. If it was not addressed to you, you have no legal right to read it. If you think you received it in error, please notify the sender. Do not forward or copy without permission of the sender. This message may be considered a commercial electronic message under Canadian law or this message may contain an advertisement of a product or service and thus may constitute a commercial electronic mail message under US law. You may unsubscribe at any time from receiving commercial electronic messages from PNC at http://pages.e.pnc.com/globalunsub/
PNC, 249 Fifth Avenue, Pittsburgh, PA 15222; pnc.com

EXHIBIT "A"

STATE OF SOUTH CAROLINA,

COUNTY OF RICHLAND

IN THE COURT OF COMMON PLEAS

Bóveda Asset Management, Inc

                                    Plaintiff,

vs.

The PNC Financial Services Group, Inc dba
PNC Bank
Shameka N. Grier-McCray, Assistant Vice President
Erica (PNC Regional Loss Prevention Manager for
Mrs. Grier-McCray)

                                    Defendant.

SUMMONS

**2016CP400**3991

FILE NO. _____ -CP-____-_____

*(stamp: JEANNETTE W. MCBRIDE C.C.P. & G.S.  2016 JUN 28 PM 2: 55  RICHLAND COUNTY FILED)*

TO THE DEFENDANT ABOVE-NAMED:

      YOU ARE HEREBY SUMMONED and required to answer the complaint herein, a copy of which is herewith served upon you, and to serve a copy of your answer to this complaint upon the subscriber, at the address shown below, within thirty (30) days after service hereof, exclusive of the day of such service, and if you fail to answer the complaint, judgment by default will be rendered against you for the relief demanded in the complaint.

Columbia, South Carolina

_____
                    Plaintiff/Attorney for Plaintiff

Dated: June 28, 2016

Address:    10945 State Bridge Road
                 #401-451
                 Alpharetta, GA 30022

SCCA 401 (5/02)

STATE OF SOUTH CAROLINA
RICHLAND COUNTY
FIFTH JUDICIAL DISTRICT

Bóveda Asset Management, Inc.
        Plaintiff,

    -vs-

The PNC Financial Services Group, Inc. dba
PNC Bank
Shameka N. Grier-McCray, Assistant Vice President
Erica (PNC Regional Loss Prevention Manager for Mrs. )
     Grier-McCray)

Civil File No.

# 2016CP400 3991

## JURY TRIAL DEMAND

## COMPLAINT

Come Now, Plaintiff, Bóveda Asset Management, Inc a corporation duly formed under and in existence within in the State of Florida and files its complaint against the above named Defendants as identified below and herein:

1. The Plaintiff's CEO is Kenneth Witherspoon, a married man and US Veteran ("CEO").
2. PNC Financial Services Group, Inc is a corporation legally organized and existing in the State of Pennsylvania ("Bank" and/or "Corporate").
3. PNC Bank is a dba of Corporate which its local retail centers operate.
4. PNC Financial Services Group, Inc operates local bank branches in 18 states, one of which is South Carolina, with its branch located at 701 Gervais Street, Columbia, SC ("Branch").

WHEREIN, Plaintiff hereby states that Bank through its Branch Manager identified herein violated applicable state and federals laws as identified herein below

### Statement of Salient Facts

| Date / Time | Description of Events |
|---|---|
| | Background |
| June 16, 2016<br>Approx. 1215 | 1. CEO visited Branch after being instructed that although the account opening process started online CEO must visit a branch to complete the opening process. |

2. Once inside Branch CEO was greeted by an employee inquiring of the purpose for the visit. CEO informed the employee that he was there to inquire about opening a business account. The employee stated that Mrs. Shameka would be the one to talk regarding the account opening and pointed to Mrs. Shameka standing at an island in the center of the Branch floor.

3. Mrs. Shameka identified herself as Shameka Grier-McCray, Branch Manager ("Branch Manager"). While standing in the center of the floor, CEO informed Branch Manager that the account opening process was started online and he was instructed that before the account could be opened the account he had to complete the process at a branch. Branch Manager then inquired and received the name of the Plaintiff and the Plaintiff's EIN number. CEO further informed  Branch Manager that Plaintiff is a Florida Corporation and CEO needed to learn if, the account could be opened in SC because of the time constraints and did not certain

if he would be back in Florida in time to open the account before the application would deleted.

4. Branch Manager informed CEO that she was not certain if she could but would call her associate in Florida she then corrected the statement and said her associate branch in Florida to see if she could open the account. Branch Manager made the call and spoke with someone, informing the person on the other end the situation and CEO was sitting in her office. After hanging up the phone Branch Manager informed CEO they could open the account.

5. The Branch Manager then asked for the articles of incorporation, CEO informed her she can obtained the articles from online and Branch Manager replied she could not pull them from online and had to receive them from CEO. CEO informed her that he would have to leave to obtain them but would be back in a few minutes because he had a scanned copy of the document on his laptop.

**Approx. 1335**   6. CEO returned with the Articles of Incorporation and at that time Branch Manager inquired for the IRS issued EIN Letter. CEO reminded Branch Manager that he had previously provided her with the EIN. Branch Manager then stated she needed the IRS issued Letter for verification. CEO informed her that he would return after he retrieved the document, Branch Manager provided a business card, writing IRS Letter on the rear of the business card. She further asked if CEO could email the EIN Letter to her and informed CEO that the process would take about 40 to 45 minutes to open the account so, if CEO could email the document to her, she would get started on the process so it would not take up too much of CEO's time. CEO informed her yes he could email the document and he would email the document. Branch Manager further informed CEO that she take lunch at 2 o'clock.

**1415**   7. After having to log into the Plaintiff's VPN to access the required information, CEO emailed a copy of the EIN letter to Branch Manager. CEO further printed a hard copy of the document just in case Branch Manager did not receive the emailed document.

**Approx. 1432**   8. CEO returned to Branch to complete the account opening process. Once in Branch Manager's office CEO informed Branch Manager that the document was emailed to her. When she searched her email Branch Manager informed CEO that she did not receive the email. CEO then informed her he brought a hardcopy just in case and provided her with the hardcopy.

9. During the process, Branch Manager asked for two forms of ID, she requested to see CEO's Driver's License and also a Debit or Credit Card as a second form of ID. Both items were provided upon request.

**PINACLE Express**   10. Branch Manager, after a series of questions recommended a business account which she stated was best for Plaintiff based on anticipated uses. She then recommended the PINACLE Express service because of the volume of wire transfers in and out of the account and had CEO to speak with PINACLE Express representative on speaker phone to initiate the process. During the PINACLE Express call the representative inquired of CEO's full legal name and CEO provided her with his full legal name. The PINACLE Express representative stated she had to use CEO's full legal name. The Branch Manager, in an undertone, stated she had to use the name on the Articles of Incorporation.

11. PINACLE Express documents were signed.

Bóveda Asset Management, Inc -v- PNC Financial Services Group, Inc
Page 3 of 9

Initial Deposit

12. Branch Manager then asked CEO about the deposit and CEO informed Branch Manager the amount of the deposit and further informed Branch Manager that deposits were in check form. CEO then separated the checks from their respective receipt handing them to Branch Manager as they were separated. Branch Manager noticed on one check, which was a refund check, that the Payee on the Check was Boveda Realty Investors. CEO informed Branch Manager that he did not notice the name on the check was not to Plaintiff and Branch Manager then stated "We will process it through for you. There will be two day availability, but we will go ahead and process it through". CEO state "Thank you".

13. Branch Manager got up from her desk, returned CEO's ID items and exited her office with the checks and returned a few minutes later with the deposit receipt and the account documents for signature. The documents were signed and CEO exited the office.

14. CEO returned to the Branch a few minutes later and inquired of two things. 1. CEO remembered that during the process Branch Manager did not provide him with online access information. She informed CEO that he would have to wait for the ATM/Debit card before he would be able to gain access to online. 2. To inquire if the check with the Payee name of Boveda Realty Investors would be a problem and Branch Manager assured CEO they would process the check through.

15. Branch Manager, stated she forgot to have CEO input an online PIN and had CEO to enter the PIN. CEO did so and exited the Branch.

June 18, 2016
Approx. 2300

16. Contrary to what Branch Manager told CEO, CEO went to the Bank's website to see what was needed to gain access to the online portal and learn that everything was already provided in the branch visit on June 16, 2016. So, CEO signed up online and noticed that the email address entered by the Branch Manager was incorrect. The errors were corrected in the online session.

June 20, 2016
Approx. 0814

17. CEO received a call from the Patriot Act Group at PNC Bank however CEO was not available to answer the call at that time a message was left. CEO returned the call and the representative inquired of his full legal name CEO provided his full legal name and the representative placed CEO on a brief hold and came back indicating that was the only thing needed because the application submitted by the bank was Ken and they needed CEO's full legal name. CEO informed the Patriot Act Group representative the Branch Manager indicated she had to use the name on the corporate documents instead of CEO's full legal name. CEO further inquired if, everything was okay, and if they needed anything more from CEO. Patriot Act Group representative informed CEO they did not need anything else and everything was good.

Approx. 1230

18. CEO visited branch to withdraw cash to pay bills and was set back when the teller told him the deposit was on hold. However Teller informed CEO that she could call and have the hold lifted within a few minutes. Teller made a call then went to Branch Manager's office. Branch Manager then asked CEO to come to her office. When in Branch Manager's office, she informed CEO the bank placed a hold on the whole deposit, not just the check. Branch Manager then informed CEO it was because of the name difference, and CEO only had to wait 5 days from the date of deposit, until the check cleared and the funds would be available on Friday, June 24, 2016. Branch Manager further stated that she would have to verify some

Bóveda Asset Management, Inc -v- PNC Financial Services Group, Inc
Page 4 of 9

things on Thursday, June 23, 2016 to ensure the hold is lifted on Friday.

19. Branch Manager further explained they had to ensure the check cleared the Payer's bank account before so there is no issue with the Payer. CEO then informed Branch Manager the business entity was also a company which he controlled and if she needed the documents showing the entity as in his control he could provide the documents. Branch Manager once again recommended to CEO to wait until Friday.

20. CEO exited branch and returned to inquire about receiving the check back to have it reissued to Plaintiff by the Payer and redeposit it to the account, since the check has not yet cleared. CEO further informed Branch Manager that he felt that would take some time to do because the initial check took a while to be issued because the companies were merging. Branch Manager stated that because the check was already deposited it could not be returned and it would be Friday when the funds would be available. CEO exited the Branch.

June 24, 2016    21. CEO called the telephone automated banker to learn if the hold has been lifted as the
Approx. 0846    Branch Manager indicated. CEO learned that the funds were not available and selected to speak with a representative. Once on the line CEO informed the representative the reason for the call and after verification and requesting account identifying information was ask to hold while the account is checked. When the representative returned to the line, CEO was informed that the deposit was placed on hold. The representative then informed CEO that she could not give any more information because she did not know and would have to transfer me to the department that placed the hold on the deposit and she further provided CEO with the phone number in the event I needed to call back.

22. When the call was transferred the voicemail indicated the department was closed and would not open until 0900.

Approx. 0910    23. Calling the provided number, the automated reception identified the department as the Loss Avoidance Group and the representative that answered identified herself as Wendy and provided CEO with information on the account. She informed CEO that the deposit was on hold and the Branch had control over having the hold lifted. She stated that the Branch Manager is working with the local market to verify the deposited item and once they have completed their review the Branch would notify their department to lift the hold. CEO then asked her who placed the hold on the deposit and she confirmed her department placed the hold on the account.

24. During the conversation CEO informed Wendy that the previous representative who provided CEO with the number to your department informed CEO the reason for the hold was because the bank which the check was drawn upon was not going to honor the check. The Representative Wendy informed CEO that was not true and the previous representative misspoke and did not tell CEO the truth because they could not see if the check cleared and did not know if the check was going to be paid.

25. She stated she would provide the branch information to speak with the Branch to have the hold lifted when she begun to speak the name of the Branch Manager CEO interrupted her and informed her he had the Branch's information and would speak with the Branch Manager.

Approx. 1145    26. CEO arrived at the Branch, after waiting for about 15 minutes or so, Branch Manager came

out and escorted CEO to her office. She proceeded to inform CEO that the deposit is still on hold and everything was out of her control. She further stated that she attempted to contact the bank which the check was drawn upon, Wells Fargo, to determine if the check has cleared or not. Branch Manager further informed CEO that she called the company that issued the check , NRT, to learn if the check cleared and to validate the check and stated she spoke with Mrs. Linda and Mrs. Linda provided her with the number to NRT's Comptroller in Charlotte, NC, Mrs. Sain.

27. Branch Manager further stated that when she learned of the hold which was placed by Wendy in their Loss Avoidance Department Wendy informed her that the hold was going to be for 3 years. That threw up all sorts of flags with the CEO and he stated, that did not make any sense because if it was a major issue with the check the bank should have return the check and state they cannot collect on the check or ask for proof that CEO had controlling interest in the entity which was payee on the check.

28. CEO spent nearly an hour trying to understand the logic which the Branch Manager was feeding to him and could not understand the logic other than the bank verifying the check being issued by NRT to the payee on the check which CEO did not have any issues with.

29. CEO left branch highly upset.

Approx. 1315    30. CEO arrived at the office of NRT and informed Mrs. Linda of the situation and requested the number of someone that could help verify the check has cleared. Mrs. Linda then went into an office and return with a photocopy of a business card which contained Mrs. Sain's contact information.

Approx. 1330    31. CEO returned to Branch to speak with Branch Manager, taking a witness.

32. While waiting for Branch Manager to become available, CEO exited the Branch to call Mrs. Sain but was unable to reach her. So he returned inside the Branch. Witness was upset because Branch Manager came out of the office and although we were there before other customers the Branch Manager elected to take the other customers before taking CEO and Witness stating she did not have everything she needed yet.

33. Once the Branch Manager came out again to speak CEO and Witness, CEO requested that the conversation be held in her office as Branch Manager was trying to hold the conversation in the waiting area.

34. After entering Branch Manager's office the witness gathered some basic identifying information from the Branch Manager. Branch Manager was opposed to speaking with witness and witness informed Branch Manager that we were in Columbia putting together a transaction and have been working on the transaction since January and looking for $125 Million to come into the bank to support the plan that will support Veterans and Emergency Responders within the State. So, if they are going to have an issue with the small deposit given to open the account, how will the bank handle larger transactions?

35. Witness, then asked about the status of the account and Branch Manager refused to speak with Witness stating Witness was not on the account and she could not speak with Witness. CEO then informed Branch Manager that he was sitting there and Branch Manager could

Speak with Witness. Branch Manager then complied, reluctantly.

36. Branch Manager begun to restate what she had previously stated and stated they had to verify the check and it was out of her hands. She further referenced Wendy (of Loss Avoidance Department) witness was present during time when CEO spoke with Wendy and heard the conversation and heard Wendy state that Branch Manager had to verify the deposit and contact them to have the hold lifted. Witness requested that the Branch Manager to place her statement in writing on letterhead regarding the hold, Branch Manager refused and stated a letter was already sent out to the mailing address of Plaintiff.

37. Witness then requested a printout of the account; Branch Manager refused and stated they could not provide a printout. Both Witness and CEO were taken back and Witness informed Branch Manager that both Witness and CEO were once in banking and knows she can provide a printout of the account. The Branch Manager then stated the account was new and there was nothing to printout from the account. CEO reminded the Branch Manager that although the account is new, there is, if nothing else, at least one transaction, the deposit. Branch Manager then stated she could print out the activity of the account. Branch Manager printed the activity screen and brought it back to the office with a PNC stamp. Witness requested that Branch Manager sign document which she provided however, Branch Manager refused to sign the document but stapled her business card to the document instead.

38. Witness became agitated with Branch Manager and informed her that Branch Manager had lied several times. Branch Manager became agitated words were exchanged between Witness and Branch Manager. Witness and CEO vacated the Branch.

June 24, 2016
Approx. 1500

39. Witness and CEO returned to NRT(Coldwell Banker), company which issued the check, because on the printout obtained from the Branch Manager it indicated that on June 21, 2016 the check was rejected twice by the Bank and charges were assessed in the amount of $50.00 and $5.00 was on the printout.

40. Upon entering NRT(Coldwell Banker) offices, the Witness explained the situation and express disgust that the refund check which was given to Plaintiff bounced. The NRT representative went into action to clear their name. After about 10 minutes Witness and CEO were introduced to Mrs. Jennifer Harding to get to the bottom of the situation.

Exhibit A. PNC
Activity Printout

41. After explaining everything to Mrs. Harding and showing the printout from the Branch, Mrs. Harding began to call corporate executives because the PNC printout showed the payment/check was rejected on June 21, 2016 and a hard hold was place on the account also on June 21, 2016, not June 16 as informed by the Branch Manager. This was puzzling to everyone because of the size of NRT(Coldwell Banker).

42. Witness and CEO were informed by Mr. Harding to give her an hour and she will let Witness and CEO know what is going on. Mrs. Harding obtain name and phone numbers

June 24, 2016
Apprx. 1650
Exhibit B.

43. A call from Mrs. Harding to Witness informed Witness that the check clear their bank, Wells Fargo, and she will be sending a copy of the canceled check.

Bóveda Asset Management, Inc -v- PNC Financial Services Group, Inc
Page 7 of 9

## INFRACTIONS
### Count I

Breach of Trust
with Fraudulent
Intent

44. On June 20, 2016 CEO was told a hold was placed on the account for five days from the date of deposit. CEO was further informed that checks will take 5 days to clear and the Branch Manager had no control over removing the hold. On June 24, 2016 CEO was informed that the checks have not cleared but the Branch Manager had to check with the issuer of the check learn if the check cleared. CEO was provided with a printout which indicated the check deposited was rejected and a hold was placed on the account. By these actions the Branch Manager committed Breach of Trust with Fraudulent Intent;

SC Code § 16-13-230 Breach of Trust with Fraudulent Intent

### Count II

Conspiracy &
Conspiracy to
Defraud

45. Branch Manager had from June 20, 2016 to June 24, 2016 to investigate the check and failed to do so within the 5 day period. Wherein Witness and CEO found out within 2 hours what the Branch Manager failed to accomplish in 5 days.

46. In the phone call to PNC telephone banking system on Friday, June 24, 2016 the representative informed CEO the reason for the hold on the account was due to the bank, which the check was drawn upon, was not going to pay the check. Attached evidence shows the representative had no justifiable reason for making such a statement unless that was their intent or she knew of such intent.

47. Branch Manager utilized bank systems and others within the bank to place holds on funds for later removal from the banking network. While informing CEO the funds have not cleared. The utilization and coordination with other bank employees, either knowingly or in ignorance surmounted to conspiracy and violates the following statute(s);

SC Code § 16-17-410 Conspiracy
18 USC § 371 Conspiracy to Commit Offense

### Count III

Anti-trust
Violation

48. On June 24, 2016 Branch Manager indicated that when the funds are released they will close the account. When CEO inquired for the reason for closing the account the Branch Manager failed to provide an answer and simply stated it was out of her hands and that decision would be made by her Loss Prevention Manager Erica which is located in North Carolina.

49. The Bank has no reason to close the account except to restrict trade and prevent competition, because all documents were correct and true otherwise the account would not have been opened.

50. By virtue of the acts described above and within this suit, Defendants knowingly committed acts against Plaintiff is the intent to prevent Plaintiff from operating as legal enterprise which will cause unmeasurable and irreparable harm to Plaintiff and is in violation of the following;

Sherman Act of 1890
Clayton Act of 1914

Boveda Asset Management, Inc. v. Branch Bank and Trust Company et al Complaint
Page 8 of 9

Federal Trade Commission Act of 1914

## Prayer for Relief

WHEREFORE, Plaintiff Boveda Asset Management prays for relief, that judgement be entered in its favor against the Defendants as follows:

A. On Count I (Breach of Trust with fraudulent intent), judgement against the Defendants for treble damages as further established at trial, plus a penalty of One Hundred Thousand Dollars ($100,000) per Defendant for each day Plaintiff funds were on hold after June 20, 2016 as established by trial. Plaintiff further pray for the immediate removal of Branch Manager from her position and that the Solicitor General of the State of South Carolina cause arrest warrants to be issued and criminal charges be brought against Branch Manager as provided by law;

B. On Count II (Conspiracy & Conspiracy to Defraud), judgement against the Defendants for treble damages as further established at trial, plus a penalty of One Hundred Thousand Dollars ($100,000) per Defendant for each day Plaintiff funds were on hold after June 20, 2016 as established by trial;

C. On Count III (Anti-Trust Violation), judgement against the Defendants for treble damages as further established at trial, plus a penalty of Five Billion Dollars ($5,000,000,000) per Defendant for each calendar day Plaintiff funds were on hold after June 20, 2016 as established by trial.

Plaintiff further prays that the Attorney General in and for the United States of America and or the Solicitor General of the State of South Carolina cause arrest warrants to be issued for the Branch Manager along with and for all co-conspirators as provided by law.

## PRAYER FOR A JURY TRIAL

The Plaintiff prays for a jury trial in this action.

Respectfully Submitted
Boveda Asset Management, Inc

Kenneth Witherspoon, Its CEO
10945 State Bridge Road
Suite 401-451
Alpharetta, GA 3022
Telephone: (833) 368-5640 ext. 2119
Email: info@1baminc.com

Bóveda Asset Management, Inc -v- PNC Financial Services Group, Inc
Page 9 of 9

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served, at the minimum, by First Class U.S. Mail this 27th day of
June 2016 to;

Honorable Loretta Lynch
Attorney General of the United Stated
950 Pennsylvania Avenue N.W.
Washington, D.C. 20530-0001

William S. Demchak (CEO)
The PNC Financial Services Group, Inc
The Tower at PNC Plaza
300 Fifth Avenue
Pittsburgh, PA 15222

George Long (Corporate Secretary)
The PNC Financial Services Group, Inc
The Tower at PNC Plaza
300 Fifth Avenue
Pittsburgh, PA 15222

I HEREBY CERTIFY that a copy of the foregoing was served, in person this 27th day of June 2016 to;

Shameka N. Grier-McCray
701 Gervais Street
Columbia, SC 29201

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF RICHLAND | ) | Case No.: 2016-CP-40-03991 |
| | ) | |
| Boveda Asset Management, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | **AFFIDAVIT OF** |
| | ) | **LAWRENCE M. HERSHON** |
| vs. | ) | |
| | ) | |
| The PNC Financial Services Group, Inc. dba PNC Bank; Shameka N. Grier-McCray, Assistant Vice President; and Erica (PNC Regional Loss Prevention Manager for Mrs. Grier-McCray); | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Lawrence M. Hershon, under oath, being first duly sworn, hereby deposes and says:

1.    I am over eighteen (18) years of age, suffer from no known disability and am competent to testify to the facts set forth herein.  The statements in this affidavit are made based upon my personal knowledge.

2.    I am an attorney for the Defendants in the above-captioned matter.

3.    Upon information and belief, the Plaintiff is not registered to do business in South Carolina with nor has a certificate of authority from the South Carolina Secretary of State.  The search results through the South Carolina Secretary of State website for any registered business entity that starts with the term "Boveda" is attached hereto as Exhibit A.

4.    Upon information and belief, Kenneth Witherspoon, the signatory for Plaintiff in the captioned action, is not an attorney and is not a member of the Bar for the State of South Carolina.  I conducted a search for the name "Kenneth Witherspoon" in the state attorney directory, and there were no results of any bar member with this name.

FURTHER, AFFIANT SAYETH NOT.

This 26th day of July, 2016.

PPAB 3332935v1

EXHIBIT "3"

Lawrence Hershon

SWORN to before me this
26th day of July , 2016.

Notary Public for South Carolina
My Commission Expires: 10 | 5 | 21

South Carolina Secretary of State: Search Business Filings                    Page 1 of 2



........................................................................................................................................

**Corporate Search Results** as of 7/26/2016 3:07:23 AM

No Results Found.

**Corporation Name:** Boveda
**Options:** Begins With

---

Disclaimer: The South Carolina Secretary of State's Business Filings database is provided as a convenience to our customers to research information on business entities filed with our office. Updates are uploaded every 48 hours. Users are advised that the Secretary of State, the State of South Carolina or any agency, officer or employee of the State of South Carolina does not guarantee the accuracy, reliability or timeliness of such information, as it is the responsibility of the business entity to inform the Secretary of State of any updated information. While every effort is made to insure the reliability of this information, portions may be incorrect or not current. Any person or entity who relies on information obtained from this database does so at his own risk.

---



Physical Address: Edgar Brown Building - 1205 Pendleton Street Suite 525 Columbia, SC 29201
Mailing Address: SC Secretary of State's Office 1205 Pendleton Street Suite 525 Columbia, SC 29201

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the ***Defendants' Motion to Dismiss*** was served on July 26, 2016 by mailing a copy of same in the United States mail, postage prepaid, addressed as follows:

> Kenneth Witherspoon
> 10945 State Bridge Road, #401-451
> Alpharetta, GA  30022

_____
Randi M. Berlin

# Richland County Common Pleas

**Clerk : Jeanette W. McBride**
**Richland County Judicial Center**
**Columbia, SC 29201**
**(803) 576-1999**

| | | |
|---|---|---|
| Received From: | Boveda Asset Management Inc | Date: 7/26/2016 |
| | | Receipt #: 211056 |
| | | Clerk: FALCONEP |
| Paying for: | Boveda Asset Management Inc, | |
| Transaction Type: | Payment | Reference #:10463 |
| | | Comment: |
| Payment Type: | Check          $25.00 | |
| Total Paid: | $25.00 | |

Non-Refundable

| Case # | Caption | Previous Balance | Amount Paid | Balance Due |
|---|---|---|---|---|
| 2016CP4003991 | Boveda Asset Management Inc  vs   PNC Financial Services Group Inc  , defendant, et al | $25.00 | $25.00 | $0.00 |
| **Total Cases:**  **1** | | **$25.00** | **$25.00** | **$0.00** |